**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| DENISE OLSZEWSKI, | ) CASE NO. 1:19-cv-00754 |
| Plaintiff, | ) JUDGE CHRISTOPHER A. BOYKO |
| v. | ) MAGISTRATE JUDGE DAVID A. RUIZ |
| THE CLEVELAND CLINIC, | ) **REPORT AND RECOMMENDATION** |
| Defendant. | ) |

**I. Procedural History**

Plaintiff Denise Olszweski ("Plaintiff") commenced this action on April 5, 2019, against her former employer The Cleveland Clinic ("Defendant") alleging disability discrimination, interference with Family Medical Leave Act ("FMLA"), and FMLA retaliation. (R. 1). Now pending before this court is Defendant's "Motion to enforce the Settlement Agreement and Request for Attorneys' Fees and Costs" representing that Plaintiff through her initial counsel agreed to an enforceable settlement of this action on January 16 and 17, 2020. (R. 16). Plaintiff through new counsel has filed a brief in opposition (R. 18), and Defendant has filed a reply brief in support of its motion. (R. 19).

The Honorable Christopher A. Boyko has referred Defendant's Motion to Enforce for preparation of a Report and Recommendation. (R. 20). On March 27, 2020, this court held a

telephone conference with counsel and discussed the referred motion, including whether either party sought an evidentiary hearing, and gave the parties until April 14, 2020, to meet and confer before presenting their respective positions. (R. 23).

On April 13, 2020, Plaintiff filed a "Motion for leave to File Instanter Sur-Reply in Support of Opposition to Motion to Enforce Settlement" (R. 24), which Defendant has opposed. (R. 26). It is recommended that the motion for leave to file a surreply be DENIED.[1] (R. 24). On April 14, 2020, the parties filed a Joint Status Report that stipulates "to the authenticity and admissibility of the exhibits attached to each party's respective filings related to Defendants' Motion to Enforce the Settlement Agreement and Request for Attorneys' Fees." (R. 25). Furthermore, "the parties have conferred and concluded that a hearing on Defendant's motion is not necessary." *Id*. After considering the parties' filings and supporting evidence, the court agrees that a hearing is not necessary and that this matter is ripe for review.[2]

---

[1] Defendant filed its reply brief on March 5, 2020. (R.19). In this court's view, the motion—filed over a month after the reply brief—is untimely. Further, Plaintiff gave no indication during the telephone status conference that such a brief was forthcoming. Finally, although Plaintiff argues a surreply is necessary to respond to *new* arguments made by Defendant in the reply brief concerning certain "Attestations of Destruction," (R. 24, PageID# 183), Defendant's argument is an obvious reply to a position taken in Plaintiff's original brief in opposition—that no agreement was ever formed in part due to unagreed upon attestations. (R. 18, PageID# 136). Thus, the surreply merely seeks to put flesh on the bones of a skeletal argument Plaintiff alluded to in her opposition brief. (R. 24-1).

[2] No party has requested an evidentiary hearing and none is required because the parties have submitted all relevant evidence in writing and have stipulated to the authenticity and admissibility of the evidence. "Courts may summarily enforce settlement agreements without a hearing in order to promote the policy of speedy and reasonable resolution of disputes." *Rorick v. Silverman*, Case No. 1:14-cv-312, 2017 WL 3124155, *10 (N.D. Ohio July 24, 2017) (citing *Aro Corp. v. Allied Witan Co.*, 531 F.2d 1368, 1372 (6th Cir. 1976) (summary enforcement of settlement determinable solely as a matter of law, rendering evidentiary hearing unnecessary, where terms were "clear and unambiguous.")).

## II. Brief Overview[3]

Since Plaintiff commenced this action on April 5, 2019, the parties have conducted written discovery, they have engaged in settlement negotiations, and Defendant deposed Plaintiff on January 15, 2020. (R. 16, PageID# 108; R. 18, PageID # 128). On January 16, 2020, Plaintiff and her initial attorney, Fredrick Bean, had two telephone conversations in which they discussed possible settlement. (R. 18-1, PageID# 140-141, ¶¶13-14). Following the second conversation, Attorney Bean's assistant emailed Plaintiff a document regarding "Denise N. Olzewski v. Cleveland Clinic Settlement Authority." (R. 18-1, PageID# 140, ¶3; R. 18-3, PageID# 143-146, Exh. C). The first line of the document states, "Pursuant to our conversation, you [Plaintiff] have given me [attorney Bean] authority to accept $5,000 *or above* to settle this matter." *Id.* at PageID# 144 (emphasis in original). The letter further states that "the settlement authority is the very least we would settle for without getting further authority from you." *Id.* The letter advises Plaintiff of potential settlement terms, requests Plaintiff sign the letter acknowledging her understating, and indicates "[o]nce you have signed this authorization, you are giving us as your attorneys the authority to negotiate on your behalf. Once we agree to a settlement for an amount at or above the authority provided herein, you will be bound by that agreement even before any other settlement documents are provided." *Id.* at PageID# 145.

Also following the second conversation, Attorney Bean emailed Defendant's counsel, Michael Chesney, that a settlement of $5,000.00 was reachable that day only—prior to the costs of the depositions that Plaintiff had noticed of two Defendant employees for January 17, 2020.

---

[3] The court recognizes that the enforceability of the agreement described in this section as well as former Plaintiff's counsel's authority to negotiate and enter into any agreements on Plaintiff's behalf are in dispute.

3

(R. 16-2, PageID# 118, Exh. 2; *see also* R. 16-1, PageID# 116, Exh. 1). Defense counsel responded via email on January 16, 2020, indicating "We are settled. Let's talk tomorrow." *Id*. The next day, on January 17, 2020, attorneys Bean and Chesney agreed that the "PHI [Personal Health Information] process" will be part of the agreement.[4] (R. 16-3, PageID# 118, Exh. 3). Also, on January 17, 2020, Plaintiff emailed attorney Bean and raised some questions about potential settlement terms, such as payment via 1099 tax form and waiver of "admin(clerical) [f]ees." (R. 18-4, Ex. D, PageID# 147-48). But Plaintiff did not dispute that she had provided counsel "authority to accept $5,000 *or above* to settle this matter." *Id.* Plaintiff's email stated "[o]nce we had talked via phone the entire time I believed that negotiations were taking place[,]" but questioned how the negotiations occurred. *Id.* On January 19, 2020, Plaintiff emailed attorney Bean that "the settlement offer is off the table," noting that she had not signed the settlement authorization letter, that she wanted the depositions to go forward, and complained about a "60/40" split, and that her share of the settlement was "$2,000 in my pocket." (R. 18-8, Ex. H, PageID# 154).

On January 24, 2020, Defendant's counsel Andrew Cleves emailed a draft settlement agreement to Plaintiff's counsel Bean along with an email indicating that defense counsel were "working on getting the attestations that Mike [Chesney] mentioned that we'll need you and Plaintiff to sign." (R. 16-4, PageID# 120, Exh. 4). Attorney Bean responded the same day, indicating that his "[i]nitial edits are attached. I still have to do a more complete review with my

---

[4] According to Defendant, "the need for Plaintiff and her attorney to execute attestations resulted from the discovery just days earlier in Plaintiff's deposition that she had improperly removed patients' protected health information ("PHI") from the workplace." (R. 19, PageID# 173). Therefore, the attestations relate to Plaintiff and her counsel confirming they have destroyed or returned any PHI.

4

client, but in order to provide her with a complete agreement, I have filled in the payment amounts and revised the confidentiality provision which is overboard in a few respects." *Id*. By January 28, 2020, Defendant's counsel responded that they were "okay with the proposed changes," attached an updated agreement that incorporated them, and indicated they will let Plaintiff's counsel know when the attestations are ready to be signed. (R. 16-5, PageID# 122, Exh. 5).

On January 31, 2020, Plaintiff, through her new and current counsel, alerted counsel for Defendant that it was Plaintiff's position that Plaintiff had not authorized attorney Bean "to resolve her matter." (R. 18-15, PageID# 164, Exh. O).

### III. Law and Analysis

**A. Enforceability of the Settlement Agreement**

Defendant's motion requests that the court enter an order enforcing the terms of a settlement agreement allegedly reached by the parties' counsel and award attorneys' fees and costs. (R. 16, PageID# 108). Defendant asserts that the parties "agreed to a settlement in writing on January 16, [2020,] and then confirmed the specific terms of the agreement on January 16 and 17." (R 16, PageID# 111).[5] Plaintiff's Opposition brief primarily argues that her former counsel, attorney Bean, did not have "express authority to negotiate and/or settle [her] claims[,]" but also asserts that "even assuming there was authorization, no enforceable agreement was ever formed between the parties". (R. 18, PageID# 127, 134-137). Because Plaintiff contends there was no enforceable settlement agreement capable of being breached, she argues attorney fees are

---

[5] Defendant has not submitted to the court nor moved to enforce the draft settlement agreement exchanged between the parties, but has moved to enforce an agreement purportedly memorialized in the above-referenced email communications.

inappropriate. (R. 18, PageID# 137). Further, Plaintiff maintains the issue of whether such fees are recoverable for breach of a settlement agreement is an unresolved issue in the State of Ohio. *Id*.

Generally, Plaintiff maintains that the purported agreement to settle her case for $5,000.00 was unenforceable because: (1) she indicated to counsel she did not want to settle; (2) she wanted to move forward with the depositions of Defendant's witnesses; (3) she did not sign a "Settlement Authority" letter emailed to her by her then counsel; and (4) she did not agree to settle for that specific amount. (R. 18).

"It is well established that courts retain the inherent power to enforce agreements entered into in settlement of litigation pending before them." *ARO Corp. v. Allied Witan Co.*, 531 F.2d 1368, 1371 (6th Cir. 1976), *cert. denied*, 429 U.S. 862 (1976); *accord Bamerilease Capital Corp. v. Nearburg*, 958 F.2d 150, 152 (6th Cir. 1992); *Brock v. Scheuner Corp.*, 841 F.2d 151, 154 (6th Cir. 1988); *see also Kukla v. Nat'l Distillers Prods. Co.*, 483 F.2d 619, 621 (6th Cir. 1973) ("The power of a trial court to enter a judgment enforcing a settlement agreement has its basis in the policy favoring the settlement of disputes and the avoidance of costly and time-consuming litigation."). "A valid settlement agreement must arise from a meeting of the minds, and must contain an offer and acceptance of the essential or material terms of the agreement." *Wanzo v. City of Cleveland*, No. 1:17 CV 1163, 2019 WL 95915, 2019 U.S. Dist. LEXIS 1195, at *2 (N.D. Ohio Jan. 3, 2019) (Nugent, J.) (*citing Rulli v. Fan Co.*, 79 Ohio St.3d 374, 376, 683 N.E.2d 337 (Ohio 1997).

In addition, it is true that "the rule in Ohio and elsewhere is that an attorney who is without specific authorization has no implied power by virtue of his general retainer to compromise and settle his client's claim or cause of action." *Morr v. Crouch*, 19 Ohio St.2d 24, 27, 249 N.E.2d

6

780, 783 (Ohio 1969) (citing 6 Ohio Jurisprudence 2d 138, Attorneys at Law, Section 88; Annotation, 30 A. L. R. 2d 944, 945). However, Plaintiff is incorrect in her view that such authorization must be "express."[6] To the contrary, "[t]he authorization for an attorney to settle a client's claim need not be express, but may be ascertained from the surrounding circumstances." *Elliott v. Gen. Motors Corp.*, 72 Ohio App. 3d 486, 488, 595 N.E.2d 463, 464 (Ohio Ct. App. 1991) (citations omitted); *accord Brinkr, Inc. v. United Riggers, Inc.*, 2000 WL 222129, 2000 Ohio App. LEXIS 678, at *6 (Ohio Ct. App. Feb. 22, 2000); *Rorick v. Silverman*, No. 1:14-cv-312, 2017 WL 3124155, 2017 U.S. Dist. LEXIS 114645, at *31 (S.D. Ohio July 24, 2017); *Rubel v. Lowe's Home Ctrs., Inc.*, 597 F. Supp. 2d 742, 746 (N.D. Ohio 2009) (Carr, J.); *Patel v. Lowes Home Ctrs., Inc.*, No. 2:05-cv-0775, 2007 WL 544049, 2007 U.S. Dist. LEXIS 12020, at *16 (S.D. Ohio Feb. 16, 2007).

In an analogous decision from this district, a plaintiff had argued that a settlement agreement was not reached because the plaintiff "retained the right to final review and approval." *Wensink Farm Seeds, Inc. v. Lafever*, No. 16-cv-1282, 2017 WL 2735573, 2017 U.S. Dist. LEXIS 97609, at *10-11 (N.D. Ohio June 23, 2017) (Helmick, J.). The decision observed that "if a client authoriz[es] his attorney to negotiate a settlement, but then the attorney 'settles the client's claims on terms unacceptable to the client, such a settlement is enforceable despite the client's lack of consent.'" *Wensink*, 2017 WL 2735573 at *4 (citing *Rubel*, 597 F. Supp. 2d at 746 and *Patel,* 2007 WL 544049; *see also Argo Plastic Prods. Co. v. City of Cleveland*, 15 Ohio St. 3d 389, 392, 15 Ohio B. 505, 474 N.E.2d 328 (1984) (holding that the party was bound to a

---

[6] Although this proposition is set forth by Plaintiff's current counsel in the opposition brief (R. 18), this belief is also evident in Plaintiff's email from January 17, 2020, to her former counsel indicating that she did not believe negotiations should have proceeded until she had signed a "Settlement Authority" letter emailed to her. (R. 18-5, PageID# 151-152, Exh. F).

7

settlement of $500,000 negotiated by their attorney even though the party had only authorized the attorney to settle for $2,500)).

The Sixth Circuit Court of Appeals has explained, while applying the similar rules of Michigan, that:

> [A] third party who reaches a settlement agreement with an attorney employed to represent his client in regard to the settled claim is generally entitled to enforcement of the settlement agreement even if the attorney was acting contrary to the client's express instructions. In such a situation, the client's remedy is to sue his attorney for professional malpractice. The third party may rely on the attorney's apparent authority unless he has reason to believe that the attorney has no authority to negotiate a settlement.
>
> But for this rule of law, prudent litigants could not rely on opposing counsel's representation of authorization to settle. Fear of a later claim that counsel lacked authority to settle would require litigants to go behind counsel to the opposing party in order to verify authorization for every settlement offer.

*Capital Dredge & Dock Corp. v. Detroit*, 800 F.2d 525, 530-31 (6th Cir. 1986).

Based on the above authority, the appropriate inquiry here is not whether Plaintiff signed the "Settlement Authority" letter from her attorney, not whether Plaintiff expressly consented to settling her case for $5,000.00, nor is it whether Plaintiff's former counsel "act[ed] contrary to the client's express instructions." *Id.* Rather, the pertinent issue is whether Plaintiff, in light of the surrounding circumstances, authorized attorney Bean to negotiate with Defendant on her behalf. First and foremost, this court has carefully reviewed Plaintiff's Declaration submitted along with her opposition brief. (R. 18-1, PageID# 140-141, Exh. A). Of the sixteen declarations therein, the first twelve merely authenticate the other exhibits submitted along with the opposition brief. *Id*. Conspicuously absent from Plaintiff's declaration is a denial that Plaintiff ever authorized counsel to negotiate, or that Plaintiff was expressly revoking any prior authorization she had given him to negotiate. *Id.* Plaintiff does represent that she "did not want to

8

settle" and that she wanted previously scheduled depositions to go forward. *Id.* Plaintiff also acknowledges that, during a twenty-plus minute telephone conversation with her counsel on January 16, 2020, they discussed risks of proceeding with the litigation, her counsel advised that she would be "'lucky if he could get $5,000" to settle, that "he could try to settle the case for that amount[,]" that she wanted to continue with the case, and before the conversation concluded, counsel "unilaterally stated that he would 'negotiate' on [her] behalf." (R. 18-1, PageID# 141, ¶14, Exh. A). Despite counsel's clear indication that he intended to negotiate on Plaintiff's behalf, her declaration does not indicate that she instructed counsel to refrain from doing so. *Id.*

Instead, Plaintiff claims that it was her "understanding that, by 'negotiate', Mr. Bean would obtain an offer from the Clinic to present to me." *Id*. In this court's view, conveying and obtaining offers of settlement is part and parcel of negotiating settlements. Again, Plaintiff does not indicate that she voiced any opposition to her counsel entering such negotiations on her behalf, only stating that she did not consent to settle the case for "$5,000 or on any other terms." *Id*. Considered in its entirety, the court construes Plaintiff's declaration as, at the very least, confirming Plaintiff authorized her attorney to negotiate on her behalf, even though Plaintiff's declaration does not acknowledge that she expressly authorized the terms on which counsel ultimately settled the action. Again, the law is clear that if a client authorizes her attorney to negotiate on her behalf and the attorney settles the claims on terms unacceptable to the client, such a settlement remains enforceable. *See, e.g., Wensink*, 2017 WL 2735573 at *4.[7]

---

[7] Assuming *arguendo* that former counsel's alleged actions are accurately described in Plaintiff's briefs and emails, the recourse is not to disturb the negotiated settlement with the opposing party. Rather, the court in *Capital Dredge & Dock Corp.* noted that where counsel acts contrary to a client's express instructions in settling a case, "the client's remedy is to sue his attorney for professional malpractice." 800 F.2d at 530-531. Since that issue is not before this court, nothing in this report and recommendation should be construed as assessing the viability

In addition, following Plaintiff's conversation with her counsel on January 16, 2020, Plaintiff's counsel through a legal assistant emailed Plaintiff the document regarding "Denise N. Olzewski v. Cleveland Clinic Settlement Authority." (R. 18-4, PageID# 143-146, Exh. E). The first line of the document states, "Pursuant to our conversation, you [Plaintiff] have given me [attorney Bean] authority to accept $5,000 *or above* to settle this matter." *Id.* at PageID# 144 (emphasis in original)." Plaintiff sent a responsive email to her counsel early on the morning of January 17, 2020, but nothing in that communication indicates that she had not authorized him to negotiate with Defendant nor does it dispute that Plaintiff authorized attorney Bean "to accept $5,000 *or above* to settle this matter." (R. 18-4, PageID# 147-148, Exh. D). Instead, Plaintiff took issue with some of the terms not reflected in the document she received, such as the waiver of clerical fees and payment being made via 1099 form. *Id*. Further, Plaintiff's email confirms that once she had spoken with attorney Bean on the phone, "[she] believed the negotiations were taking place." *Id*. Despite Plaintiff's current stance that she never authorized attorney Bean to negotiate a settlement on her behalf, Plaintiff's email takes no issue with the settlement authority she provided to attorney Bean or attorney Bean conducting negotiations; and, instead it takes issue with the manner in which they were conducted. *Id.*

Attorney Bean responded later that same day on January 17, 2020, indicating that the "settlement authority document from our office" was not the settlement itself, but "simply a document confirming our conversation over the phone. Nothing more." (R. 18-5, PageID# 149, Exh. E). The email also stated:

> I can report as of this morning that Cleveland Clinic has accepted a deal in principal [sic] to settle for $5,000 just like we discussed. I am still working with them on the tax (W2/1099) terms just like I discussed with you so I can get the

---

of such allegations.

> most favorable terms possible for you. So, we have an agreed on settlement, but just a few additional terms to work out, but everything we discussed will be included, don't worry.

(R. 18-5, PageID# 149, Exh. E). Counsel's email, at a minimum, reflects that he had discussed settlement negotiations with Plaintiff, which combined with Plaintiff's above-referenced emails acknowledging that settlement negotiations were "taking place", undermines Plaintiff's current position that she was steadfastly opposed to settlement negotiations and simply wanted to proceed with further litigation.

On January 19, 2020, Plaintiff emailed counsel indicating that she had not signed the settlement authorization document. (R. 18-8, PageID# 154, Exh. H). While this email does seem, on its own, to buttress Plaintiff's position that she did not give attorney Bean authorization to enter into settlement negotiations, the statement contradicts the email two days earlier confirming after their phone call "the entire time [Plaintiff] believed the negotiations were taking place." (R. 18-4, PageID# 147-148, Exh. D). Further the email prominently complains about a "60/40" split of the settlement moneys and her grievance that "$2,000.00 in [her] pocket" was not enough for giving up her 'freedom' of speech." *Id*. She did not assert any opposition to the $5,000.00 settlement amount, but did state that "[t]he settlement is off the table." *Id*. These latter statements strongly indicate that a settlement was "on the table," and that her primary opposition to that settlement was the allocation of settlement funds and not the contention that counsel allegedly entered into unauthorized negotiations.

On January 24, 2020, Plaintiff emailed attorney Bean indicating that she did not want to settle, and noted that counsel had started negotiating with Defendant before she signed a contract allowing him to negotiate on her behalf—referring to the fact that she had not signed the above-referenced settlement authority document received from attorney Bean's office. (R. 18-12,

11

PageID# 158, Exh. L). Although this email is perhaps Plaintiff's strongest evidence that she did not authorize counsel to negotiate on her behalf, her statement therein is contrary to her previous, more contemporaneous communications, and is further completely contradicted by attorney Bean's response wherein he relates the following:

> Let me reemphasize a few things: you agreed to settle this case for $5,000, as you and I have had multiple conversations about settlement on January 16 which ended with your agreement to settle the case. It was after this, around 3pm, that I communicated to CCF's counsel that my client would agree to accept $5,000 to settle. That communication happened after you gave your authority, the only way in which it could have happened. As a standard formality, my office in this same time frame, emailed you our standard letter confirming your agreement to $5,000 as settlement authority, the same letter which also explains some of the details surrounding settlement and a general "what to expect" moving forward. CCF accepted our demand to settle the case at 5:03pm (via email). I informed you of the same. At no time prior to then did you voice any objection or attempt to revoke your authority.

(R. 18-13, PageID# 160, Exh. M).

Attorney Bean's rendition of events is more consistent with the content and tenor of the email communications produced by the parties than Plaintiff's assertion that she never authorized counsel to negotiate. Again, Plaintiff's emails complain about some terms of the settlement, but do not explicitly indicate that Plaintiff never wanted any negotiations to occur in the first instance. Moreover, Plaintiff could have stated in her declaration, under penalty of perjury, that she never authorized negotiations, never authorized attorney Bean to settlement for "$5,000 or above," or that she instructed counsel to forego any settlement negotiations. Given the dispositive nature of this issue, the conspicuous absence of such an assertion calls into question Plaintiff's current stance.

Finally, Plaintiff's secondary argument that no agreement was reached because "there had been no agreement regarding the attestations," is not well taken. (R. 18, PageID# 136). This

attestations issue pertains to Plaintiff and her counsel confirming Plaintiff has either returned or destroyed patient PHI she removed from the workplace. (R. 19, PageID# 173). After reviewing the entire exchange of emails between defense counsel and attorney Bean, at no point did attorney Bean state that Plaintiff providing attestations of document destruction was an impediment to settlement, despite defense counsel raising the issue in nearly each email regarding the parties' settlement.

Furthermore, Plaintiff has failed to persuade the court with any meaningful argument that these attestations constitute "material terms" that altered the agreement. The court cannot take Plaintiff's conclusory assertion that the attestations resulted in a counteroffer and transform it into a substantive argument, without improperly becoming an advocate for Plaintiff. It is well established that "issues which are 'adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.'" *See, e.g., Kennedy v. Commissioner*, 87 Fed. Appx. 464, 2003 WL 23140056, at *1 (6th Cir. 2003) (citing *United States v. Elder*, 90 F.3d 1110, 1118 (6th Cir. 1996) (rejecting perfunctory argument)); *see also McPherson v. Kelsey*, 125 F.3d 989, 995-996 (6th Cir. 1997), *cert. denied*, 523 U.S. 1050 (1998) (same). The *McPherson* court aptly stated: "[i]t is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to ... put flesh on its bones." *McPherson*, 125 F.3d at 995-996 (internal citations omitted); *accord Paul v. Detroit Edison Co.*, 642 Fed. App'x 588, 592 (6th Cir. 2016); *Design Basics, LLC v. Forrester Wehrle Homes, Inc.*, No. 3:15-cv-666, 2017 U.S. Dist. LEXIS 188005, *8 (N.D. Ohio, Nov. 14, 2017) (declining to "add flesh to the bones of a party's skeletal ... argument") (Carr, J.). As such, the court deems this argument waived. Plaintiff's brief has not apprised the court of the import of these attestations of destruction, provided any context as to why they were central to any agreement, or offered any explanation as to why inclusion of

the attestations were so significant that they would have undermined a settlement agreement from Plaintiff's perspective even if all other terms were agreed upon.[8]

For the reasons set forth above, the court recommends finding that the parties reached an enforceable written settlement memorialized by contemporaneous email communications between the parties' counsel on January 16 and 17, 2020. (R. 16-2, PageID# 118; R. 18-2 PageID# 142). Therefore, the court recommends finding Defendant agreed to pay and Plaintiff agreed to accept $5,000 in exchange for Plaintiff dismissing this action with prejudice and confirming Plaintiff and her counsel have either destroyed or returned PHI removed from Defendant's workplace.

**B. Attorneys' Fees and Costs**

Defendant asserts that Plaintiff's failure to comply with the settlement agreement justifies an award of attorneys' fees, citing the Sixth Circuit's observation that "Ohio law allows a court to award attorney's fees as compensatory damages when a party's breach of a settlement agreement makes litigation necessary, *even where none of the exceptions to the American Rule have been shown*." (R. 16, PageID# 114, quoting *Rohrer Corp. v. Dane Elec Corp. USA*, 482 Fed. App'x 113, 117 (6th Cir. 2012) (emphasis added). While the *Rohrer* decision involved a separate legal action to enforce a settlement, a recent decision of this district has observed that "[a]ttorney's fees as compensatory damages are available whether a party files a separate breach of contract suit or a motion to enforce settlement before the original trial court." *Wilson v. Prime Source Healthcare of Ohio*, No. 1:16-cv-1298, 2018 WL 1127653, 2018 U.S. Dist. LEXIS

---

[8] Even if the court fully accepted Plaintiff's assertion—that Defendant's request that Plaintiff sign the attestations constituted a counteroffer—Plaintiff's attorney had the "implied authority to do anything reasonably necessary to effect the power actually conferred" to settle. *Rubel*, 597 F. Supp. 2d 745.

14

34445, at *8 (N.D. Ohio Mar. 2, 2018) (Gwin, J.) (citing *Myron C. Wehr Props., LLC v. Petraglia*, 2016-Ohio-3126, 65 N.E.3d 242, 254-56 (Ohio Ct. App. 2016)).

Plaintiff does not challenge the above recitation of the current state of Ohio law. Her argument that under the "American Rule" a prevailing party in a civil action is not entitled to its legal fees does not recognize the *Rohrer* court's holding. A recent decision of an Ohio appellate court essentially confirmed the Sixth Circuit's interpretation of Ohio law by finding, upon *en banc* review, "that attorney fees can be awarded as compensatory damages to the prevailing party on a motion to enforce a settlement agreement when the attorney fees are incurred as a direct result of a breach of the settlement agreement" notwithstanding the "American Rule" followed in Ohio. *Rayco Manufacturing, Inc. v. Murphy, Rogers, Sloss & Gambel*, 2019-Ohio-3756 at ¶¶4-5, 2019 WL 4509394, 2019 Ohio App. LEXIS 3822 (Ohio Ct. App. Sep. 19, 2019), *appeal accepted for review by* 157 Ohio St.3d 1535, 137 N.E.3d 1207 (Table), 2020-Ohio-122 (Ohio Jan. 21, 2020). Plaintiff asserts this court should not follow these decisions because the issue is under consideration by the Ohio Supreme Court after it accepted the appeal of the *Rayco* decision.

While this court agrees with *Wilson* that a breaching party may be "entitled to attorney's fees stemming from … additional litigation as compensatory damages," the court does not recommend such an award given the facts and circumstances of this case. 2018 WL 1127653. First, it does not appear that Plaintiff has acted in bad faith. Second, Plaintiff's actions have not resulted in protracted litigation beyond the filing of the pending motion. It also bears noting that an award of attorney fees may be inequitable, as such fees would consume or even exceed the $5,000 settlement amount. Finally, when considering the aforementioned in light of the uncertainty of the law due to the Ohio Supreme Court's review of the *Rayco* decision, this court

15

declines to recommend making such an award in this case.

## IV. Conclusion

After considering the arguments raised by the parties in their briefs, the court recommends the following: (1) GRANTING IN PART AND DENYING PART Defendant's Motion to Enforce (R. 16), by finding that the settlement agreement is enforceable—Defendant agreed to pay and Plaintiff agreed to accept $5,000 in exchange for Plaintiff dismissing this action with prejudice and confirming Plaintiff and her counsel have either destroyed or returned PHI removed from Defendant's workplace—but denying Defendant's attorney fees and costs; and (2) DENYING Plaintiff's Motion for Leave to file a surreply (R. 24).

s/ *David A. Ruiz*
United States Magistrate Judge

Date: June 3, 2020

### OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may waive the right to appeal the district court's order.** ***See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981);** ***Thomas v. Arn*, 474 U.S. 140 (1985),** *reh'g denied***, 474 U.S. 1111 (1986).**