**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| DENISE N. OLSZEWSKI | ) Case No. 1:19-CV-754 |
|     *Plaintiff,* | ) |
| | ) Judge Christopher A. Boyko |
| -vs- | ) |
| | ) **PLAINTIFF'S OBJECTIONS TO THE** |
| THE CLEVELAND CLINIC | ) **MAGISTRATE JUDGE'S REPORT AND** |
| FOUNDATION | ) **RECOMMENDATION** |
| | ) |
|     *Defendant.* | ) |

Plaintiff Denise N. Olszewski ("Ms. Olszewski") respectfully submits her objections to the Magistrate Judge's Report and Recommendation (the "Report"), issued on June 3, 2020 (Doc #27-1). The Magistrate's recommendation that Defendant's motion to enforce settlement agreement be granted in part is premised on the finding that Ms. Olszewski *implicitly* authorized her former counsel to negotiate and settle her claims against Defendant. The record evidence, however, shows that Ms. Olszewski did not give specific authorization to her prior counsel, either expressly or implicitly, to negotiate and settle her claims, and to so rule given the record evidence flies in the face of Ohio law. Further, the Magistrate abused his discretion by recommending that Ms. Olszewski not be permitted to file her Sur-reply to address a new argument by Defendant and to correct a factual misstatement.

Therefore, the Magistrate's recommendation granting, in part, Defendant's motion to enforce and denying Plaintiff's motion for leave to submit her Sur-reply should be rejected. Instead, Defendant's motion to enforce should be denied in its entirety, and Plaintiff's motion for leave to submit her Sur-reply be granted.

Respectfully submitted,

 */s/ Kami D. Brauer*
KAMI D. BRAUER #0071030
The Law Firm of Kami D. Brauer, LLC
700 West St. Clair Avenue, Suite 316
Cleveland, Ohio 44113
(P) 216-236-8537
(F) 216-621-7810
kamibrauer@kdbrauerlaw.com

*Counsel for Plaintiff Olszewski*

**MEMORANDUM**

**I.     Brief Procedural History**

On April 5, 2019, Ms. Olszewski sued her former employer, Defendant Cleveland Clinic Foundation ("CCF"), for disability discrimination under the ADAAA and O.R.C. §4112.02(A), FMLA interference and retaliation, and retaliation in violation of O.R.C. §4112.02(I) and §4113.52.

On January 16, 2020, Ms. Olszewski's former counsel, Fred Bean, settled her case for $5,000.00 without Ms. Olszewski's authority. Despite her constant protests to settling before and after Mr. Bean's unauthorized actions, Mr. Bean failed to advise CCF that Ms. Olszewski did not agree to settle her case. Fifteen days later, on January 31, 2020, Ms. Olszewski's current counsel alerted counsel for CCF that Ms. Olszewski had not authorized Mr. Bean to resolve her matter. (Doc #18, pgs. 128-133).

On February 13, 2020, CCF moved to enforce the alleged settlement and requested attorney's fees. Ms. Olszewski opposed on February 27, 2020, and CCF replied on March 5, 2020.

On March 27, 2020, the Magistrate Judge held a status conference with the parties and ordered that the parties file a joint report by April 14, 2020, setting forth any stipulations and whether an evidentiary hearing was necessary. (Doc #23).

On April 13, 2020, Ms. Olszewski moved for leave to file a Sur-reply to respond to CCF's new argument and misstatement in its Reply brief that its insistence on Ms. Olszewski an executing attestation regarding alleged personal health information ("PHI") had nothing to do with the parties' settlement. In fact, the draft settlement agreement proposed by CCF conditioned the payment of the settlement amount on Ms. Olszewski's execution of the attestation. (Doc #24-1, pg. 188).

On April 14, 2020, the parties filed a joint report stipulating as to the authenticity and admissibility of any exhibits attached to the parties' filings[1] and stating that a hearing was unnecessary unless desired by the Court. (Doc # 25).

On June 3, 2020, Magistrate Judge Ruiz issued his Report granting, in part, CCF's motion to enforce settlement but denying CCF's request for attorney's fees. The Magistrate also denied Ms. Olszewski's motion for leave to file her sur-reply.

**II.     Standard of Review**

**A.     This Court's standard of review of the Magistrate's recommendation to grant Defendant's motion to enforce is *de novo*.**

Where objections have been made to a Magistrate Judge's Report and Recommendation on a dispositive issue, the District Court's standard of review is *de novo. See* Fed. R. Civ. P. 72(b)(3) and L.R. 72.3(b). The District Court "must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." *Id.; see also* 28 U.S.C. § 636(b)(1) ("A judge of the court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions."); and *Powell v. United States*, 37 F.3d 1499 (Table), 1994 WL 532926, at *1 (6th Cir., Sept. 30, 1994) ("Any report and recommendation by a magistrate judge that is dispositive of a claim or

---

[1]     Had Ms. Olszewski's motion for leave to file her Sur-reply been granted, this stipulation would have been applicable to the redacted portion of settlement agreement submitted as Exhibit Q.

defense of a party shall be subject to *de novo* review by the district court in light of specific objections filed by any party.")(citations omitted).

"A party who files objections to a magistrate [judge]'s report in order to preserve the right to appeal must be mindful of the purpose of such objections: to provide the district court 'with the opportunity to consider the specific contentions of the parties and to correct any errors immediately.'" *Jones v. Moore*, No. 3:04-CV-7584, 2006 WL 903199, at *7 (N.D. Ohio, April 7, 2006) (citing *U.S. v. Walters,* 638 F.2d 947, 949–50 (6th Cir. 1981)); *see also* L.R. 72.3(b) (an objecting party shall file "written objections which shall specifically identify the portions of the proposed findings, recommendations, or report to which objection is made and the basis for such objections").

**B.     This Court's standard of review of the Magistrate's recommendation to deny Plaintiff's motion for leave to file her sur-reply is whether the recommendation is contrary to law.**

Where objections have been made to a Magistrate Judge's Report and Recommendation on a non-dispositive issue, the District Court's standard of review is whether the recommendation is clearly erroneous *or* contrary to law. *See* Fed. R. Civ. P. 72(a) and L.R. 72.3(a). The "clearly erroneous" standard applies to the Magistrate's factual findings. *See Gandee v. Glaser*, 785 F. Supp. 684, 686 (S.D. Ohio 1992). The "contrary to law" standard, which is more lenient, applies to the Magistrate's legal conclusions and is an abuse of discretion standard. *See Phillips v. Philip Morris Cos., Inc*., No. 5:10-CV-1741, 2013 WL 3291516, at *2 (N.D. Ohio, June 28, 2013).

### III. Law and Argument

**A. Ms. Olszewski did not specifically authorize her prior counsel to negotiate and settle her claims. Thus, under Ohio law, the alleged settlement agreement is unenforceable.**

Under Ohio law, an attorney cannot settle his client's claims unless he has specific authority from his client to do so. If an attorney settles a client's claims without having been given authority to do so, the settlement is not enforceable. *See Morr v. Crouch*, 19 Ohio St.2d 24, 29 (1969); and *Hinton v. Trinity Highway Products, LLC*, No. 4:12-CV-1063, 2012 WL 5054140, *2-3 (N.D. Ohio, Oct. 18, 2012).

In his Report, the Magistrate states that a client's authorization for her attorney to negotiate and settle her claims need not be express but can be ascertained from the "surrounding circumstances". (Doc #27-1, pg. 218). The Magistrate concludes that Ms. Olszewski did not expressly authorize her prior counsel to negotiate and settle her claims, but instead had done so implicitly, based on the following factual findings:

(1) After Mr. Bean unilaterally announced he would negotiate for her, Ms. Olszewski did not expressly revoke the alleged authorization to negotiate and did not instruct Mr. Bean to forgo settlement negotiations (Doc #27-1, pgs. 219-220, 223);

(2) Ms. Olszewski never disputed that she had authorized Mr. Bean to settle her case for $5,000.00 or above (Doc #27-1, pg. 221-223); and

(3) Mr. Bean represented in written communications that she authorized him to settle her case for $5,000.00 (Doc #27-1, pg. 223).

These factual findings, however, are contrary to the record evidence and do not support the Magistrate's conclusion that Ms. Olszewski implicitly authorized Mr. Bean to negotiate and settle her claims.

6

1. ***Before and after her former counsel settled her claims, Ms. Olszewski repeatedly told Mr. Bean that she did not want to settle. Thus, when examining the "surrounding circumstances", Ms. Olszewski did not implicitly authorize her prior counsel to negotiate and settle her claims.***

In her Declaration, Ms. Olszewski attests that, when Mr. Bean unilaterally called her to discuss settlement on January 16, 2020, she told him that she *did not* want to settle and that she wanted him to move forward with the depositions of Defendant's witnesses that were scheduled for the next day. Later that same day, Ms. Olszewski had another conversation with Mr. Bean, during which she repeatedly told him she did not want to settle and to stop trying to change her mind. When Ms. Olszewski had to end the conversation with Mr. Bean, he unilaterally stated that he would "negotiate" on her behalf. (Doc #18-1, pgs. 140-141, paras. 13-14).

Had Ms. Olszewski been an attorney well-versed on the law on client authorization, considering her voiced opposition to settlement throughout her entire conversation with Mr. Bean, she may well have ordered Mr. Bean to refrain from negotiating. However, she is not an attorney, and her understanding at the time was that, by "negotiate", Mr. Bean would only obtain an offer from CCF to present to her. (Doc #18-1, pg. 141, para. 14). This understanding is buttressed not only by the conversation that had just taken place between her and Mr. Bean, but also by Mr. Bean's own advice to her, documented in his 8/22/2019 letter, in which he advises that settlement is a "back and forth process", he would obtain authority from her to settle "in writing", he would keep her "apprised of any progress", and she would "ultimately control settlement negotiations". (Doc #18-16). Further, as advised by Mr. Bean in his 1/16/2020 "Settlement Authority" letter to Ms. Olszewski, the alleged bottom-line settlement amount, *i.e.,* $5,000.00, would remain "confidential" and not be shared with CCF, and he would have **no authority to negotiate** on Ms. Olszewski's behalf until she signed the authorization. (Doc #18-3, pgs. 144-146). Despite his representation and Ms. Olszewski's objections to settlement, **2 minutes after he hung up the**

7

*phone with her*, Mr. Bean told CCF that the case could settle for the unauthorized bottom-line number of $5,000.00. (Doc #18-2).

In a little over 12 hours after she received Mr. Bean's 1/16/2020 "Settlement Authority" letter, on January 17th, Ms. Olszewski emailed Mr. Bean stating, "I'm not sure but there must have been some miscommunication somewhere." She then goes on to list her concerns regarding the contents of the "Settlement Authority" letter she had been sent, but also concluded her email as follows:

> Finally, the most important item was that CCF was contacted to a possible settlement decision from our side, *when I had not even given you my decision yet. I am still in awe that was done without my knowledge.* So, I am not sure where we go from here, other than proceed with deposition. (Doc #18-4, pg. 148) [emphasis added].

Later that same morning, on January 17th, Ms. Olszewski emailed Mr. Bean and again affirmed that he had no authority to negotiate and settle her claims, as follows:

> Why CCF would be contacted yesterday afternoon before you had a chance to hear my reasoning on why to continue on or settle. No way should there have been any talks until I read these terms and signed or initialed them-bottom line. (Doc #18-6).

Additionally, that afternoon, Ms. Olszewski talked with Mr. Bean by phone and again told him that she had not agreed to settle. (Doc #18-1, pg. 141, para. 16).

The communications that followed between Ms. Olszewski and Mr. Bean until and through January 24, 2020, are consistent – Ms. Olszewski repeatedly states that Mr. Bean had no authority to negotiate and settle her matter. (See Doc #18-8 and Doc #18-12). Thus, the record evidence contravenes the Magistrate's conclusion that, looking at the totality of the "surrounding circumstances", Ms. Olszewski implicitly authorized Mr. Bean to settle her claims.

8

*2.    Ms. Olszewski repeatedly disputed that she authorized Mr. Bean to settle her case for $5,000.00 or above or upon any other terms.*

The Magistrate's factual finding that Ms. Olszewski did not dispute that Mr. Bean had authority to settle her case for $5,000.00 or above is not supported by the record evidence.

In Paragraph 14 of her Declaration, Ms. Olszewski attests that at no time did she agree to have Mr. Bean present any number or other terms to CCF, nor did she authorize Mr. Bean to resolve her case for $5,000.00 or on any other terms. (Doc #18-1, pg. 14, para. 14).

The Report makes much of the fact that, in her initial January 17th email, "nothing in that communication indicates that she had not authorized [Mr. Bean] to negotiate with Defendant nor does it dispute that Plaintiff authorized attorney Bean 'to accept $5,000 *or above* to settle this matter." (Doc #27-1, pg. 221).

This finding ignores the tenor of Ms. Olszewski's January 17th email, the emails between Ms. Olszewski and Mr. Bean that followed, and the direct testimony of Ms. Olszewski in her Declaration. Again, the 1/17/2020 email disputes that Mr. Bean had any authority to settle, providing that "CCF was contacted to a possible settlement decision from our side, when I had not even given you my decision yet". (Doc #18-4, pg. 148).

*3.    Mr. Bean's self-serving emails, viewed in conjunction with Ms. Olszewski's communications with Mr. Bean and her Declaration, do not support the finding that Ms. Olszewski implicitly authorized her prior counsel to settle her claims.*

A review of Mr. Bean's email communications shows nothing more than an utter disregard for the directives given to him by Ms. Olszewski. Within hours of her learning that Mr. Bean settled her claims without her authority, Ms. Olszewski objected and continued her objections thereafter. (See Doc #18-6, #18-8, and #18-12). Additionally, Ms. Olszewski attests in her Declaration that she did not give Mr. Bean such authority. (See Doc #18-1, pgs. 140-141, paras. 13-16). Taken together, such does not support the Magistrate's finding.

9

**B.       The case law relied upon by the Magistrate is distinguishable from the facts at bar.**

The Magistrate cites to the following case law in support of his finding that, looking at the surrounding circumstances, Ms. Olszewski authorized Mr. Bean to negotiate and settle her claims: *Wensink Farm Seeds, Inc. v. Lafever*, No. 16-CV-1282, 2017 WL 2735573 (N.D. Ohio, June 23, 2017); *Patel v. Lowes Home Centers, Inc., et al.*, No. 2:05-CV-0775, 2007 WL 544049 (S.D. Ohio, Feb. 16, 2007); *Rubel v. Lowe's Home Centers, Inc.*, 597 F.Supp.2d 742 (N.D. Ohio 2009); *Argo Plastic Prods. Co. v. City of Cleveland*, 15 Ohio St. 3d 389 (1984); and *Capital Dredge and Dock Corp. v. City of Detroit*, 800 F.2d 525 (6th Cir. 1986).

The similarity in all of these cases is that the party disputing the settlement provided *express* authority to his attorney and was actively involved in the settlement process. *See Wensink Farm Seeds, supra* (plaintiff company expressly authorized its attorney to discuss settlement); *Patel, supra* (plaintiff actively participated in settlement negotiations and affirmatively assented to settlement terms); *Rubel, supra* (plaintiff provided his attorney with an open-ended authorization to "get the best he can", *i.e.,* an anticipatory acceptance); and *Argo, supra* (plaintiff company was actively involved in negotiations and permitted judgment to be entered). In *Capital Dredge*, a 1986 decision which involved a corporate plaintiff and the city of Detroit, the Sixth Circuit put aside the issue of whether plaintiff's attorney had express authority and instead examined whether plaintiff had ratified the disputed settlement or if its attorney had "apparent authority" under Michigan law. In *Hinton*, 2012 WL 5054140, at *2-3 (N.D. Ohio, Oct. 18, 2012), this district declined to follow *Capital Dredge* because it applied Michigan law, which provides that mere retention of an attorney clothes him with apparent authority to settle a client's claims. This, however, is not the law of Ohio, which requires an attorney to have express authority. *See Morr v. Crouch*, 19 Ohio St.2d 24, syllabus ¶2 (1969).

10

**C. Ms. Olszewski's execution of an attestation was a material term of the agreement, and because the language of the attestation was never provided or agreed upon, no enforceable agreement exists.**

The Magistrate recommended that the terms of the settlement agreement are as follows: CCF is to pay Ms. Olszewski $5,000.00, and in return, Ms. Olszewski will dismiss her case and execute an attestation (*i.e.,* Ms. Olszewski's confirmation that any *alleged* PHI removed from CCF has been destroyed or returned to CCF).[2] The Magistrate, however, concluded that the execution of the attestation was not a material term of the agreement. Further, the Magistrate also found that that Ms. Olszewski waived her argument that the execution of the attestation was a material term, stating that because this issue was dealt with in perfunctory manner, it was waived. (Doc #27-1, pgs. 223-225).

Waiver of an argument owing to a party's perfunctory treatment of that argument is an *appellate* rule. *See Paul v. Detroit Edison Company & Michigan Consolidated Gas Co. Pension Plan*, 642 Fed. Appx. 588, 592 ("[I]t is a settled appellate rule that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.")(citations omitted); *see also McPherson v. Kelsey*, 125 F.3d 989, 995-996 (6th Cir. 1997).

Ms. Olszewski's argument was not perfunctory. It was a factual argument. In her Opposition, Ms. Olszewski made the factual allegation that CCF's requirement that she execute an attestation was a counteroffer, and also a material term, of the parties' settlement agreement and submitted evidence to support her argument. As such, because the language of the attestation was never provided or agreed upon, no enforceable agreement existed. (Doc #18, pgs. 136-137).

Further, Ms. Olszewski attached to her Sur-reply (discussed below) the proposed settlement language, which clearly and unambiguously provides that CCF's payment to Ms.

---

[2] This issue regarding the alleged PHI has since been resolved by the parties.

11

Olszewski of the settlement amount was conditioned upon her execution of an attestation. (Doc #24-1, pg. 188). Under the Civil Rules and the Code, the District Court can consider the proposed settlement language when ruling on Plaintiff's objections. *See* Fed. R. Civ. P. 72(b)(3), L.R. 72.3(b), and 28 U.S.C. §636(b)(1).

**D. The Magistrate's recommendation that Ms. Olszewski's motion for leave to file her Sur-reply be denied is an abuse of discretion.**

The Magistrate recommended that Ms. Olszewski not be permitted to submit her Sur-reply, because: (1) her motion for leave to file a Sur-reply was untimely; (2) counsel had not advised during the parties' status conference that the filing would be forthcoming; and (3) the Sur-reply was not in response to a new argument made by CCF in its Reply brief. (Doc #27-1, pg. 213).

Ms. Olszewski's request to submit her Sur-reply was not untimely. Such request was made prior to the date that the Court ordered the parties to submit a joint report regarding any stipulations and whether the parties would be requesting a hearing. After submission of the joint report, the Court was to then determine whether it would require a hearing. Thus, Ms. Olszewski's motion for leave to file a brief Sur-reply would not have delayed the proceedings.

It is true that counsel for Ms. Olszewski did not advise the Court that the filing would be forthcoming during the parties' status conference. However, at the time of the status conference, counsel for Ms. Olszewski had not anticipated filing her Sur-reply.

Finally, CCF did make a new argument which warranted a response. In its initial motion, CCF stated that the parties settled on January 16th via email and that, "[a]fter including specifics in their January 16 communication, the parties then confirmed ***other relevant terms of the agreement*** on January 17", citing to Exhibit 3, an email providing that Ms. Olszewski would need to go through the "PHI process", *i.e.,* execute an attestation. (Doc #16, pg. 109 and Doc #16-3, pg. 119) [emphasis added]. Then, in its Reply brief, CCF claimed that the execution of the attestation

12

had nothing to do with the settlement, despite the fact that the proposed written settlement agreement conditioned payment of the settlement amount on Plaintiff's execution of the attestation. (Doc #24-1, pg. 188). This shift in Defendant's position provides a basis to permit Plaintiff's Sur-reply. *See Wilson v. Adrock, et al*., No. 5:18-CV-612, 2019 WL 5866585, *1 (E.D. KY, May 21, 2019)(change in a party's position may support a motion for leave to file a sur-reply). Indeed, in its opposition to Plaintiff's motion for leave, CCF does not dispute that payment was conditioned on receiving the executed attestation. (See Doc #26).

Therefore, not permitting Ms. Olszewski to correct the record and address CCF's new argument regarding the import of the attestation to the settlement is an abuse of discretion.

**IV.     Conclusion**

The record evidence shows that Ms. Olszewski did not authorize her prior counsel to settle her claims. To hold otherwise, under the facts of this case, would set a dangerous precedent. Further, a party should be permitted to submit a Sur-reply when such party seeks to correct the record and address a new argument made on reply.

***WHEREFORE,*** for the reasons described above, Plaintiff Denise N. Olszewski respectfully asks that the Magistrate's recommendation granting, in part, Defendant's motion to enforce and denying Plaintiff's motion for leave to submit her Sur-reply be rejected. Thus, Defendant's motion to enforce should be denied in its entirety, and Plaintiff's motion for leave to submit her Sur-reply be granted.

Respectfully submitted,

 /s/ Kami D. Brauer
KAMI D. BRAUER #0071030
The Law Firm of Kami D. Brauer, LLC
700 West St. Clair Avenue, Suite 316
Cleveland, Ohio 44113
(P) 216-236-8537
(F) 216-621-7810
kamibrauer@kdbrauerlaw.com

*Counsel for Plaintiff Olszewski*

## CERTIFICATE OF SERVICE

I hereby certify that on the 17th day of June, 2020, the foregoing Plaintiff's Objections to the Magistrate Judge's Report and Recommendation has been filed electronically. Notice of this filing will be sent to all parties and the Magistrate Judge by operation of the Court's electronic filing system, and the parties may access this filing through the Court's system.

                                                                                                                        */s/ Kami D. Brauer*  
                                                                                                                        KAMI D. BRAUER #0071030