**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **DENISE OLSZEWSKI,** | ) | **CASE NO. 1:19CV754** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE CHRISTOPHER A. BOYKO** |
| | ) | |
| vs. | ) | |
| | ) | |
| **THE CLEVELAND CLINIC** | ) | **OPINION AND ORDER** |
| | ) | |
| **Defendant.** | ) | |

**CHRISTOPHER A. BOYKO, J:**

This matter is before the Court on Defendant The Cleveland Clinic's Motion to Enforce Settlement. (ECF # 16). On March 6, 2020, the Court referred the Motion to Magistrate Judge David A. Ruiz for a Report and Recommendation. On June 3, 2020, the Magistrate Judge issued his Report and Recommendation (ECF # 27), recommending the Court grant the Motion to Enforce. Plaintiff filed her Objections on June 17, 2020. For the following reasons, the Court adopts the Magistrate Judge's Report and Recommendation and finds the parties entered into an enforceable settlement agreement.

On April 4, 2019, Plaintiff Denise Olszewski filed her Complaint with the Court, alleging Disability Discrimination due to her Obsessive Compulsive Disorder and General Anxiety, FMLA Interference and Retaliation. Olszewski worked as a Patient Service Representative for Defendant. She requested and received intermittent FMLA but began suffering harassment from her supervisor and fellow employees shortly thereafter, ultimately resulting in her termination after she filed a complaint with the EEOC.

On September 4, 2019, the Court held a Case Management Conference setting dates, including a Settlement Conference set for February 20, 2020. Plaintiff's counsel at the time was Fred Bean of the Spitz Law Firm. On February 4, 2020, Bean moved to withdraw as counsel, alleging his relationship with his client had broken down and she intended on obtaining new counsel. The following day, attorney Kami Brauer entered an appearance on behalf of Olszewski.

On February 13, 2020, Defendant filed a Motion to Enforce Settlement, contending that the parties had agreed to the terms of a settlement involving a $5,000 payment to Plaintiff in exchange for a full release. The parties discussed the terms of settlement largely via emails. According to Olszewski, she never consented to a settlement but was only informed of it after the fact by her former counsel, Bean.

In his Report and Recommendation, the Magistrate Judge described the facts surrounding the disputed settlement in detail. In summary, after telephone conversations between Olszewski and Bean, Bean sent Olszewski a document that was captioned "Re: Denise N. Olszewski v. Cleveland Clinic Settlement Authority." The first sentence of the document reads, " Pursuant to our conversation, you have given me authority to accept $5,000 or above to settle this matter." (ECF # 18-3). The document contains a signature block for Olszewski to sign but she never signed the document. On January 16, 2020, Bean sent Defendant's counsel an email offering to settle the claims for $5,000, the offer being good for only for one day and before the parties incurred the costs of depositions.

Defendant's counsel responded via email on January 16, 2020, "We are settled. Let's talk tomorrow." (Id.). Bean and Defendant's counsel spoke on the phone and then emailed each

other, agreeing that Personal Health Information ("PHI") process would need to be addressed.

On January 17, 2020, Olszewski emailed Bean, " the terms we discussed do not reflect in the documents you sent. I did not see the admin(clerical) [f]ees waived nor the payment being with a 1099 tax form. I am hesitant to sign this without those written in the document." (ECF # 18-4).

Two days later, Olszewski emailed Bean that the settlement offer was "off the table" and noted she had never signed the settlement authorization docmument. On January 24, 2020, Bean via email, responded to Defendant's counsel, " I have filled in the payment amount and revised the confidentiality provision which is overbroad in a few respects." (ECF # 18- 10). On January 28, 2020, Defendant's counsel responded they were "okay with the proposed changes." (ECF # 16-5). On January 31, 2020, Olszewski, through her new counsel, informed Defendant she had not authorized Bean to settle.

Defendant seeks to enforce the purported settlement agreement reached on January 16, and confirmed on January 17 in the emails. Olszewski alleges that Bean never had authority to enter a settlement and even if he did, no agreement was ever reached.

### Olszewski's Objections

Olszewski's objections are largely reiterations of the arguments she made in opposition to Defendant's Motion to Enforce. She argues she never specifically authorized Bean to negotiate and settle her claims. Instead, the Magistrate Judge relies on surrounding circumstances to infer authorization. However, Olszewski contends she repeatedly told Bean she did not want to settle. Olszewski contends she understood "negotiate" to mean Bean would present her with an offer from Defendant and then she would decide how to respond to the offer.

Her understanding was reinforced by the Settlement Authority document Bean sent to Olszewski wherein the letter expressly read that "***once you have signed this authorization,*** you are giving us as your attorneys authority to negotiate on your behalf." (ECF # 18-3). However, before Olszewski signed the settlement authority document, Bean told Defendant the case had settled for $5,000. In her response the next day, Olszewski told Bean she wanted to go forward with depositions. All her communications with Bean after January 16, 2020, are consistent and evidence that Olszewski never consented to settlement. Furthermore, her declaration states that she never authorized Bean to present any number to Defendant. Nor does Bean's "self-serving" emails support the Magistrate Judge's conclusion that Olszewski implicitly authorized him to negotiate on her behalf, particularly since in her declaration she expressly attests she did not give him the authority to settle her case.

Lastly, Olszewski objects to the Magistrate Judge's recommendation that there was an enforceable settlement agreement because the execution of an attestation was a material term of the agreement and because no attestation was ever provided nor agreed upon, there could be no enforceable agreement.

**Defendant's Response**

Defendant responds that under applicable law, a party need only give their attorney authorization to negotiate a settlement to create an enforceable agreement. As evidenced by the record before the Magistrate Judge, on January 16, 2020, Bean sent Olszewski a document that began, "pursuant to our conversation, you have given me authority to accept $5,000.00 or above to settle this matter." The next morning, Olszewski emailed a response which did not dispute the authorization for the $5,000 or the authority to negotiate. In fact, Olszewski expressly wrote that

4

she believed negotiations were taking place but took exception to some minor terminology in the agreement. Bean then responded that he had reached a settlement with Defendant "for $5,000 just like we discussed." On January 19, Olszewski backtracked off of settlement but again acknowledged implicitly if not explicitly that she had authorized Bean to make a settlement offer by writing "the settlement offer is off the table." Defendant points out, as did the Magistrate Judge, that by stating the settlement offer is off the table, Olszewski acknowledges there was a settlement offer on the table.

**Standard of Review**

A district court reviews de novo any finding or recommendations of the magistrate judge's report and recommendation to which specific objections are made. 28 U.S.C. § 636(b)(1)(c); 28 U.S.C. § 2254, Rule 8(b); Loc. R. 72.3(b). A party may not file a general objection to the entirety of the magistrate's report. *Ayers v. Bradshaw,* 2008 WL 906100, at*1 (N.D. Ohio Mar. 31, 2008) (citing *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d505, 508-09 (6th Cir. 1999)). "For an objection to be sufficiently specific, the petitioner must direct 'the district judge's attention to specific issues decided by the magistrate contrary to [the petitioner's] position.'" *Ayers*, at *2 (quoting *Neuman v. Rivers,* 125 F.3d 315, 323 (6thCir. 1997)).

"As a type of contract, settlement agreements are governed by state contract law." *Wensink Farm Seeds, Inc. v. Lafever,* No. 16-CV-1282, 2017 WL 2735573, at *3 (N.D. Ohio June 23, 2017 citing *Bamerilease Capital Corp. v. Nearburg*, 958 F.2d 150, 152 (6th Cir. 1992). Here, all parties agree Ohio law applies to this dispute. Under Ohio law, "a valid settlement agreement is a contract between parties, requiring a meeting of the minds as well as an offer and

5

acceptance." *Rulli v. Fan Co.,* 79 Ohio St.3d 374, 683 N.E.2d 337, 338 (1997) (syllabus). Although "[i]t is preferable that a settlement be memorialized in writing, ... an oral settlement agreement may be enforceable if there is sufficient particularity to form a binding contract." *Kostelnik v. Helper,* 96 Ohio St.3d 1, 770 N.E.2d 58, 61 (2002). "To constitute a valid settlement agreement, the terms of the agreement must be reasonably certain and clear." *Rulli,* 683 N.E.2d at 339. *Smith v. ABN AMRO Mortg. Grp. Inc.,* 434 F. App'x 454, 460 (6th Cir. 2011). With regard to the meeting of the minds requirement, "[a]s in most jurisdictions, Ohio law does not require contracting parties to share a subjective meeting of the minds to establish a valid contract; otherwise, no matter how clearly the parties wrote their contract, one party could escape its requirements simply by contending that it did not understand them at the time." *216 Jamaica Avenue, LLC v. S & R Playhouse Realty Co.,* 540 F.3d 433, 440 (6th Cir. 2008). "Instead, Ohio law requires 'that the terms of the agreement establish an objective meeting of the minds, which is to say that the contract was clear and unambiguous.'" *Jones v. City of Cleveland,* No. 1:19-CV-01275, 2020 WL 3270706, at *6 (N.D. Ohio June 17, 2020) quoting *216 Jamaica,* 540 F.3d at 440.

Here, the Magistrate Judge recommends the Court find an enforceable settlement agreement was entered between the parties wherein Olszewski agreed to accept $5,000 from Defendant in exchange for Olszewski dismissing her claims against Defendant with prejudice and Olszewski confirming she and her counsel had destroyed or returned Personal Health Information ("PHI") removed from Defendant's workplace. The January 16th emails show a clear offer from Bean to Defendant that he could "get it done at 5k. Today only, with no depositions..." (ECF # 18-2). It further shows clear acceptance by Defendant, "We are settled.

Let's talk tomorrow." (Id.). "A settlement agreement is a contract designed to terminate a claim by preventing or ending litigation. It is an agreement between a plaintiff and a defendant that the plaintiff will compromise her claim for relief and release a defendant from liability upon the defendant's payment of an amount of money." *Kinnett v. Corp. Document Sols., Inc.,* 2019-Ohio-2025, ¶ 18. Thus, at this point, the essential terms had been agreed to wherein Plaintiff would dismiss her claims in exchange for $5,000.00.

However, Olszewski claims Defendant's subsequent requirement that she provide an attestation that she destroyed all PHI created a counteroffer that upon which the parties never reached an agreement. The Magistrate Judge determined the destruction of the PHI was not a material term and that the parties' emails show it was not an impediment to settlement. Furthermore, the Magistrate Judge held that Olszewski had waived the argument because she had failed to develop it with any argumentation but only stated it in a wholly conclusory manner in her opposition brief.

The Court agrees with the Magistrate Judge that the attestation was not a material term and that it was not an impediment to settlement. None of the emails between Bean and Defendant's counsel conditioned settlement on Plaintiff's acceptance of the attestation and Defendant accepted Plaintiff's offer of settlement without requiring the attestation. Therefore, the Court agrees with the Magistrate Judge that it was not a counteroffer but was ministerial in nature and not an essential term such as to convert Defendant's subsequent request for it as a counteroffer.

The Magistrate Judge further determined that the heart of the dispute was not over whether there was an agreement on the material terms of the contract but rather, whether

7

Olszewski had given Bean authority to "negotiate" a settlement on her behalf.

Olszewski's primary argument against enforcement is that she never authorized Bean to settle for the $5,000.00. The Magistrate Judge found that under applicable federal and Ohio law, authority given to an attorney to negotiate a settlement on behalf of a client may bind the client to a settlement regardless if the client did not give final approval of the amount of settlement. For the following reasons, the Court agrees and adopts the Magistrate Judge's Report and Recommendation.

"Generally in Ohio, the client must give an attorney actual authority to settle." *Wensink Farm Seeds, Inc. v. Lafever,* No. 16-CV-1282, 2017 WL 2735573, at *4 (N.D. Ohio June 23, 2017). See *Mon v. Crouch,* 19 Ohio St. 2d 24 (1969). In other words, "[i]f an attorney settles a client's claims without his client's authorization to discuss settlement with opposing counsel, the settlement is unenforceable." *Rubel v. Loire's Home Ctrs., Inc.,* 597 F. Supp. 2d 742, 746 (N.D. Ohio 2009). But "authorization for an attorney to settle a client's claim need not be express, but may be ascertained from the surrounding circumstances." *Elliot v. Gen. Motors Corp.*, 72 Ohio App.3d 486,488 (1991); see also *Rubel,* 597 F. Supp. 2d at 745. Therefore, "if a client authorize[es] his attorney to negotiate a settlement, but then the attorney 'settles the client's claims on terms unacceptable to the client, such a settlement is enforceable despite the client's lack of consent.' " *Rubel,* 597 F. Supp. 2d at 746 quoting *Patel v. Lowes Home Centers, Inc.,* 2007 WL 544049 (S.D. Ohio Feb. 16, 2007); see also *Argo Plastic Prods. Co. v. City of Cleveland,* 15 Ohio St. 3d 389, 392 (1984).

Moreover, the Sixth Circuit has held, "[g]enerally, when a client hires an attorney and holds him out as counsel representing him in a matter, the client clothes the attorney with

8

apparent authority to settle claims connected with the matter. (Internal citations omitted). Thus, a third party who reaches a settlement agreement with an attorney employed to represent his client in regard to the settled claim is generally entitled to enforcement of the settlement agreement even if the attorney was acting contrary to the client's express instructions." *Capital Dredge & Dock Corp. v. City of Detroit,* 800 F.2d 525, 530 (6th Cir. 1986).

The Magistrate Judge determined upon the evidence before him that Olszewski gave Bean the authority to negotiate a settlement and make an offer of $5,000.00. First, the Magistrate Judge relied on Bean's January 16, 2020 email to Olszewski and attached Settlement Authority document, which began, " Pursuant to our conversation, you have given me authority to accept $5,000 or above to settle this matter." (ECF # 18-3). The Magistrate Judge found, this evidences authority given Bean by Olsewski orally, to negotiate a settlement on her behalf prior to the January 16 offer from Bean to Defendant's counsel. The Court agrees with the Magistrate Judge that this timeline is consistent with Bean's actions in negotiating a settlement. The Magistrate Judge further found that Olszewski's subsequent email response of January 17th supports this conclusion wherein Olszewski wrote: "The terms we discussed do not reflect in the documents you sent. I did not see the admin (clerical) (f)ees (sp) waived not the payment being made with a 1099 tax form." (ECF # 18-4). Thus, the Magistrate Judge correctly found Olsewski's email acknowledges a telephone discussion about settlement terms between Bean and Olszewski that coincides with the opening line of the Settlement Authority document. He further found that Olszewski does not complain about the settlement amount but rather other non-material terms that she had clearly discussed with Bean via telephone.

Furthermore, Olszewski acknowledges in her January 17th email to Bean that "once we

9

had talked via phone the entire time" she "believed the negotiations were taking place." (Id). Thus, the Magistrate Judge found that the evidence before the Court demonstrated Olszewski had given Bean authority to negotiate a settlement as she understood Bean to be negotiating on her behalf. The Court agrees, as Olszewski clearly acknowledged she knew the negotiations were going forward but objected only to certain aspects of terms that did not include the monetary amount when Bean presented her with the settlement.

Olszewski says the Magistrate Judge ignored the fact that her January 17th email went on to say, "the most important item was that CCF was contacted with a possible settlement decision from our side, when I had not even given you my final decision yet." (Id.). But as the Magistrate Judge held, Olszewski's declaration indicates that when Bean told her he would negotiate with Defendant, Olszewski declared she thought this meant Bean would obtain an offer from Defendant to present to her. Nowhere does her declaration say she told him not to negotiate with Defendant. Finally, on January 19, Olszewski emailed Bean, writing, "the settlement offer is off the table," (ECF 18-8), which obviously implies Olszewski knew a settlement offer was on the table at some point.

In short, the Magistrate Judge considered Bean's telephone conversations and emails with Olszewski on proceeding with settlement negotiations, her subsequent emails and declaration evidencing she had agreed to allow Bean to negotiate and found the weight of the evidence supported his recommendation that the parties' have an enforceable agreement to settle. The Court agrees in light of the above evidence and adopts the Magistrate Judge's Recommendation.

Therefore, for the foregoing reasons, the Court adopts the Magistrate Judge's Report and

Recommendation and grants Defendant's Motion to Enforce the Settlement Agreement.  (ECF # 16).  The Court further adopts the Magistrate Judge's recommendation that Plaintiff's Motion to File a Sur-Reply be denied as untimely filed.  (ECF # 24).  Finally, the Court adopts the Magistrate Judge's Recommendation that Defendant's Request for Attorney Fees be denied.

    IT IS SO ORDERED.


Date: October 6, 2020          /s/Christopher A. Boyko
                                     CHRISTOPHER A. BOYKO
                                     Senior United States District Judge